# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### ST. JOSEPH DIVISION

| | |
|---|---|
| **KENNETH LESLIE ENGUM, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Case No. 20-06110-CV-SJ-WBG** |
| **KILOLO KIJAKAZI,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff Kenneth Engum's appeal of Defendant Acting Commissioner of Social Security's final decision denying his applications for disability insurance benefits and supplemental security income. After carefully reviewing the record and the parties' arguments, the Acting Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Plaintiff was born in 1965 and has a limited education.[2] R. at 32, 46-48, 160, 169, 197. He previously worked as a conveyor feeder off-bearer and warehouse laborer. R. at 32, 63-64. In August 2018, Plaintiff applied for disability insurance benefits and supplemental security income, alleging a disability onset date of August 1, 2018. R. at 24, 160-75. In December 2018, his applications were denied. R. at 91-95. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). R. at 98-100.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, who was appointed Acting Commissioner of the Social Security Administration, is automatically substituted for former Commissioner of the Social Security Administration Andrew Saul as Defendant in this suit.

[2] Plaintiff completed the 7th grade but subsequently left school. R. at 47-48, 197, 372.

On August 21, 2019, ALJ Christina Young Mein held a video hearing during which Plaintiff and a vocational expert testified. R. at 40-66. Thereafter, on September 30, 2019, the ALJ issued a decision finding Plaintiff is not disabled. R. at 24-33. She concluded Plaintiff's severe impairments are "degenerative disc disease, peripheral neuropathy, and obesity." R. at 27. Additionally, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work[3] with the following additional limitations:

> [H]e can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit 6 hours and stand or walk 6 hours in an 8-hour workday. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to vibration, hazardous moving machinery, and unprotected heights.

R. at 27-29.

Based on her review of the record, her RFC determination, and the testimony at the hearing, the ALJ concluded Plaintiff can work as a retail marker, inserting machine operator, or small parts assembler. R. at 32-33. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-7, 157-59. He now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

---

[3] "Light work" is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

"As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Collins*, 791 F.3d 923, 928 (8th Cir. 2015)). In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, the court must affirm. *See id.*

## III. DISCUSSION

Plaintiff's sole argument is the ALJ's RFC is not supported by substantial evidence, and therefore, this matter must be reversed. Doc. 16 at 1, 9-23. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*.

Plaintiff argues the ALJ's RFC is not supported by substantial evidence because the ALJ (A) relied on an "outdated, non-examining state agency consultant's opinion," and (B) improperly evaluated his testimony and subjective complaints when formulating the RFC.[4]  Doc. 16 at 1.

## A.    Medical Opinions

### (1)    Standard

Under the applicable regulations, no single medical opinion or medical source is given any particular deference or specific evidentiary weight.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).[5]  The ALJ is now required to evaluate the persuasiveness of medical opinions and prior administrative findings with consideration of five factors: supportability,[6] consistency,[7] relationship with the claimant (including length of treatment relationship, frequency of examination, purpose of treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion…."  *Id.* §§ 404.1520c(a), 404.1520c(c)(1)-(5), 416.920c(a), 416.920c(c)(1)-(5).  When an ALJ evaluates the persuasiveness of medical opinions, supportability and consistency are the "most important factors."  *Id.* §§ 404.1520c(a), 416.920c(a).

In her decision, the ALJ must "articulate…how persuasive [she] find[s] all of the medical opinions…."  *Id.* §§ 404.1520c(b), 416.920c(b).  Three "articulation requirements" must be met. *Id.* §§ 404.1520c(b)(1)-(3), 416.920c(b)(1)-(3).  First, "when a medical source provides multiple

---

[4] Despite mentioning "mental" in his statement of issues in his brief, the remainder of Plaintiff's brief and his reply focus solely on his physical RFC.  *See* Doc. 16 at 2-21; Doc. 22.

[5] Plaintiff filed his applications after March 27, 2017.  R. at 24, 160-75.  Accordingly, 20 C.F.R. §§ 404.1520c and 416.920c apply.

[6] Supportability is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[7] Consistency is defined as "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

medical opinion(s)…[the ALJ] will articulate how [she] considered the medical opinions…from that medical source together in a single analysis using the factors" identified above. *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). Second, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Third, when the ALJ finds "two or more medical opinions… about the same issue are both equally well supported…and consistent with the record…but are not exactly the same, [the ALJ] will articulate how [she] considered the other most persuasive factors" set forth above. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

### (2)    Medical Opinions Considered by the ALJ

#### (a)    V. Nada Kumar, M.D.

In September 2018, Dr. V. Nada Kumar conducted a consultative examination of Plaintiff. R. at 370-76. Dr. Kumar's narrative report indicated that Plaintiff had a normal range of motion ("ROM") in both upper and lower extremities. R. at 372. Dr. Kumar noted Plaintiff had decreased ROM of the lumbar spine, "[p]ara-lumbar muscle spasms," bilateral weakness and sensory deficits in the lower extremities, sluggish knee jerks, and an inability to stand on his heels. R. at 372. Despite these findings, he also documented Plaintiff could walk without assistance, was able to stand on his toes, and had normal ROM in his lower extremity joints. *Id.* Dr. Kumar determined Plaintiff's cervical spine had normal ROM in all directions. R. at 373. Regarding Plaintiff's upper extremities, Dr. Kumar observed normal ROM in his shoulders, elbows, and wrists, as well as normal motor and sensory functions. *Id.* Based on his examination, Dr. Kumar opined Plaintiff's ability to sit, or stand was "limited to 1 to 2 hours" in an eight-hour workday. R. at 373. Further, he indicated Plaintiff's ability to lift objects more than twenty pounds was "limited," and he "cannot do 8 hours of a day." *Id.*

A ROM evaluation form accompanied Dr. Kumar's narrative report. R. at 374-75. The form indicated Plaintiff had normal ROM in his shoulders, elbows, wrists and knees. R. at 374. The ROM form indicated Plaintiff had full grip strength in both hands, could fully extend his hands, could make a fist, and could oppose his fingers. *Id.* Upper extremity strength was noted as normal. *Id.* Regarding lower extremities, Dr. Kumar indicated on the ROM form there was normal ROM in the hip, the dorsi-flexion of the ankle,[8] the cervical spine, and the lumbar spine.[9] R. at 375. Plaintiff had normal muscle strength in his lower extremities. *Id.*

The ALJ found Dr. Kumar's opinion was unpersuasive because his "rather severe limitations" were based "heavily upon [Plaintiff's] subjective report of symptoms as opposed to clinical findings." R. at 31. The ALJ also noted inconsistencies in Dr. Kumar's opinion, such as abnormal findings in the narrative report that were not documented in the ROM form. *Id.* The ALJ opined the "inconsistencies erode[d] the persuasiveness of [Dr. Kumar's] opinion." *Id.* The ALJ also found Dr. Kumar's opinion to be "inconsistent with and unsupported by the various diagnostic imaging scans" as well as Plaintiff's activities of daily living. *Id.*

Although Plaintiff does not specifically object to the weight afforded to Dr. Kumar's opinion, the opinion is referenced in Plaintiff's brief. The undersigned finds the ALJ properly followed the procedures for evaluating medical opinions with respect to Dr. Kumar, including the requirement that she articulate how persuasive she found the medical opinion. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The undersigned finds substantial evidence supports the ALJ's decision to find this opinion unpersuasive.

---

[8] The form contains no ROM measurements for the plantar-flexion of either the right or left ankle. R. at 375.

[9] The normal ROM observation for the lumbar spine directly contradicts Dr. Kumar's written narrative report which indicated decreased ROM in the lumbar spine. R. at 372, 375.

(b)     **Michael O'Day, D.O.**

In December 2018, Dr. Michael O'Day, a state agency consultant, reviewed Plaintiff's medical records and completed a physical RFC assessment.  R. at 68-78, 80-90.  Dr. O'Day considered Plaintiff's treatment notes from December 2017, which showed mild pain with ROM in the thoracic spine.  R. at 75, 87.  He also noted the records from Plaintiff's July 2018 lumbar spine MRI, which indicated considerable lumbar spondylosis with foreman encroachment at L4-5 and L5/S1, but went on to note Plaintiff's electromyogram, also from July 2018, only showed mild peripheral polyneuropathy.  R. at 75, 87.

Dr. O'Day also reviewed and considered the consultative examination performed by Dr. Kumar.  *See* R. at 75-76, 86-87.  Dr. O'Day opined that Dr. Kumar's opinion "relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion."  R. at 76, 88.  He further observed that Dr. Kumar's opinion "contains inconsistencies, rendering it less persuasive."  *Id*.  Dr. O'Day indicated that Dr. Kumar's "medical opinion is without substantial support from the medical source who made it, which renders it less persuasive."  *Id*.  Finally, Dr. O' Day noted that Dr. Kumar's opinion is not consistent with the ROM findings.  R. at 75, 87.

Dr. O'Day also considered Plaintiff's activities of daily living.  R. at 74-75, 86-87.  He noted Plaintiff lived in a house with friends, could perform his personal care, and could make simple foods.  R. at 75, 87.  Dr. O'Day observed that although Plaintiff reported he could not do chores, he also reported that he could drive, go out alone, go out to a porch two to three times daily, shop once a week for thirty minutes, handle money, paint pictures, watch television, and read.  *Id*.  He also acknowledged Plaintiff reported he could not stay in one position too long while sleeping.  *Id*.

Based on his review of the medical records, Dr. O'Day found Plaintiff could perform a range of light work as defined in the federal regulations, except he could only occasionally climb, balance, stoop, kneel, crouch, and crawl. R. at 74, 77, 86, 89. He also concluded Plaintiff could occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand, walk, or sit for six hours in an eight-hour workday; and was unlimited in his ability to push and pull. R. at 73, 85. He found Plaintiff should "avoid concentrated exposure" to vibration and hazards. R. at 74, 86.

The ALJ found Dr. O'Day's opinion was persuasive because he is a "highly qualified physician" who is familiar with Social Security rules and regulations. R. at 30. In addition, the ALJ concluded Dr. O'Day's opinion was supported by Plaintiff's activities of daily living and the objective medical evidence, which includes lumbar and thoracic radiographs, cervical and lumbar MRI scans, and nerve conduction studies. R. at 30-31.

Plaintiff argues the ALJ's RFC and the opinion of Dr. O'Day are "identical" and the ALJ erred by relying upon Dr. O'Day's opinion because it was "inconsistent with the record" and based on "limited medical evidence." Doc. 16 at 11-12. Because Dr. O'Day did not have the opportunity to review medical records – including chiropractic care, physical therapy, and pain management – added after his review, and other pain management, Plaintiff contends the ALJ's reliance upon his opinion was improper. *Id*.

The Court finds the ALJ did not err by relying upon the opinion of Dr. O'Day when formulating her RFC. It is undisputed that Dr. O'Day's opinion was rendered prior to medical records related to chiropractic care and physical therapy being added to the record. *See* Doc. 16 at 12, 14; *see also* Doc. 21 at 17. However, the added records do not reflect a significant change in Plaintiff's condition after Dr. O'Day rendered his opinion. The additional records reflect

physical therapy for lumbar pain, prescription of a cane, a diagnosis of cervical spine spondylosis and radiculopathy in the upper extremity, and chiropractic care. *See*, *e.g.*, R. at 263, 386-417, 441, 445-58, 468-556, 558-59. Although these records were not available when Dr. O'Day rendered his opinion, the ALJ considered these records when formulating the RFC.

On review, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Even if the reviewing court would weigh the evidence differently, the court must nonetheless affirm the denial of benefits if there is substantial evidence to support the ALJ's finding. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). When the ALJ evaluated Dr. O'Day's opinion, she found it was not only supported by detailed citations to objective medical evidence, including lumbar and thoracic radiographs, cervical and lumbar MRI scans, and nerve conduction studies, but it was also buttressed by Plaintiff's reported daily living activities. R. at 69-75. Because Dr. O'Day's opinion was consistent with and supported by the objective medical evidence and Plaintiff's daily living activities, the ALJ properly determined the opinion was persuasive. Accordingly, the undersigned finds the ALJ did not err by finding Dr. O'Day's opinion was persuasive as his opinion was supported by substantial medical evidence in the record.

## B. Subjective Complaints

### (1) Standard

When evaluating a Social Security claimant's subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th

Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)). The ALJ is not required to discuss each of these factors. *Id*. (citation omitted). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

A reviewing court does not reweigh the evidence before the ALJ. *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citation omitted). Additionally, the Court must "defer to the ALJ's determinations regarding" a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Guilliams*, 393 F.3d at 801 (citation omitted). This is because determinations about credibility "are in the province of the ALJ," and therefore, this Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

**(2)     The ALJ's Consideration**

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. at 28. She concluded that although Plaintiff had been diagnosed with degenerative disc disease and peripheral neuropathy, "the objective medical evidence does not support [Plaintiff's] central allegations of debilitating symptoms." *Id*. The ALJ noted an MRI and radiograph of Plaintiff's lumbar spine during the relevant period showed "moderate to severe degenerative disc disease with foreman encroachment," but also observed a radiograph of his thoracic spine approximately four months before the alleged disability onset date was "unremarkable." *Id*. at 28-29.

Additionally, the ALJ observed a June 2018 EMG and nerve conduction study of Plaintiff's lower extremities showed "possible" bilateral S1 radiculopathy and mild peripheral poly neuropathy, and a cervical MRI scan found mild-to-moderate multilevel spine spondylosis. R. at 29. The ALJ acknowledged Plaintiff occasionally demonstrated abnormal findings, such as edema, decrease range of motion of his lumbar spine, paraspinal muscle spasms, weakness and sensory deficits in his bilateral lower extremities, sluggish knee jerks, and an antalgic gait. R. at 29, 314, 341, 363, 372-75, 419, 424, 429, 435, 440, 448, 558. However, despite these abnormal findings, the ALJ also noted Plaintiff's contemporaneous treatment records during the relevant period "routinely revealed full strength and range of motion in all joints and extremities, preserved reflexes, an unremarkable gait, no use of an assistive device, intact sensation in all extremities, negative straight leg raise testing, good coordination, and proper muscle tone." *Id*. Accordingly, the ALJ concluded the diagnostic findings were not "entirely consistent with the severity" of Plaintiff's allegations. R. at 29.

In addition to the clinical and objective findings discussed *supra*, the ALJ also considered Plaintiff's activities of daily living and other self-reported activities. R. at 30. Specifically, she noted that despite his impairments, Plaintiff "engaged in a somewhat normal level of daily activity and interaction." *Id*. The ALJ observed Plaintiff had the ability to bathe and dress himself independently, prepare simple meals, drive a vehicle, manage his own finances, wash dishes, and shop at Walmart. *Id*. She found the "physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." *Id*.

While his ability to perform these daily activities does not disprove disability, "[i]nconsistencies between subjective complaints of pain and daily living patterns may…diminish

credibility." *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (citation and internal quotations omitted). The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about their limitations. *Id.* On review, this Court cannot reweigh the evidence and must defer to the credibility assessment of the ALJ. Here, the credibility assessment is supported by good reasons and substantial evidence. Based on the foregoing, the Court will not disturb the ALJ's decision to discredit Plaintiff's subjective complaints. Accordingly, the Court must affirm the Commissioner's decision.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE:    March 28, 2022                          */s/ W. Brian Gaddy*
                                                                    W. BRIAN GADDY
                                                                    UNITED STATES MAGISTRATE JUDGE